No. 16-cv-02891-WMW-SER
_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
_____

Regents of the University of Minnesota,

Plaintiff,

v.

LSI Corporation and Avago Technologies U.S. Inc.

Defendants.
_____

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OR ALTERNATIVELY, TO STAY THE ACTION PENDING *INTER PARTES* REVIEW**
_____

| | |
|---|---|
| Lewis A. Remele, Jr. (MN #90724) | David E. Sipiora (CO # 29759) |
| Jessica L. Klander (MN #392290) | pro hac vice |
| BASSFORD REMELE, P.A. | Edward J. Mayle (VA # 80667) |
| 33 South Sixth Street, Suite 3800 | pro hac vice |
| Minneapolis, MN 55402 | Kilpatrick, Townsend & |
| Phone 612-333-3000 | Stockton LLP |
| | 1400 Wewatta Street, Suite 600 |
| | Denver, Colorado  80202 |
| | Phone 303-405-8528 |

*Attorneys for Defendants*

# INTRODUCTION

Defendants LSI Corporation ("LSI") and Avago Technologies U.S. Inc. ("Avago U.S.") respectfully move to transfer venue of this case to the Northern District of California because it is a far more convenient and logical venue for this action. In the alternative, Defendants move to stay this action pending the outcome of administrative Patent Office proceedings that could simplify or moot this case.

The Regents of the University of Minnesota ("the University") alleges that Defendants infringed on expired U.S. Pat. No. 5,859,601 ("the '601 patent").[1] Defendants vigorously deny this allegation, and the evidence and witnesses relevant to establishing the facts in this case largely reside in the Northern District of California. Because both Defendants are headquartered in San Jose, this action could have been brought in the Northern District of California. As such, the Court should proceed to evaluate the "convenience" and "interest of justice" factors to determine whether transfer of venue is warranted. *See* 28 U.S.C. § 1404(a). Both factors favor transfer.

First, the Northern District of California is by far a more convenient venue. Both Defendants are headquartered in San Jose, California, and their key witnesses, tangible evidence, and documents are in California. In contrast, the University does not have *any* hard infringement evidence, as the accused products allegedly "cannot be reverse-engineered." [ECF No. 56 at 2.] The University mentions three key "senior executive" engineering witnesses in the First Amended Complaint, and all three of them reside in the

---

[1] The '601 patent was filed on October 15, 1996 and expired on October 15, 2016. Accordingly, the only claim for relief in this case is for alleged past damages.

Northern District of California. Finally, more of the non-party witness will be within the subpoena power of the Northern District of California than this Court.

Second, the interests of justice also strongly favor transfer. This District has two judicial vacancies, and litigating this complicated and hotly-disputed patent case may consume this Court's time and attention, diverting judicial resources away from other important criminal and civil cases. And the Northern District of California has a greater interest in this case than this District does because the University does not sell any products that are purportedly covered by the '601 patent, but the Defendants allegedly do.

Alternatively, if the case is not transferred, it should be stayed pending Patent Office proceedings. Defendants filed a Petition for *Inter Partes* Review ("IPR") seeking cancellation of asserted '601 patent claims. Case IPR2017-01068 (filed March 10, 2017). Congress created IPRs as an efficient and rapid system for challenging patents that should not have issued. IPR proceedings take place before the Patent Trial and Appeals Board ("PTAB"), where three administrative PTAB judges decide each IPR. The PTAB judges have expertise in patent matters and have a scientific or engineering education. Given the expertise of the PTAB and the potential for substantial streamlining of a case like this one, courts routinely stay litigation pending IPR proceedings.

As explained more fully below, all of the relevant factors favor a stay in this case. First, the University would not be unduly prejudiced by a stay—the '601 patent is expired and the only possible remedy is *past* damages. Second, the IPR proceedings can dramatically simplify this case and could moot it entirely if the asserted '601 patent claims are cancelled. Third, this case is at a very early stage. Finally, staying this

complex patent case would reduce the burdens of litigation on this Court and on the parties. Accordingly, if the case is not transferred, it should be stayed pending the IPR proceedings in Patent Office involving the '601 patent.

## NATURE AND STAGE OF PROCEEDINGS

This is a complicated patent case. The '601 patent at issue— "Method and Apparatus for Implementing Maximum Transition Run Codes"—is highly technical. [ECF No. 40-2.] It is similar to an academic paper written for electrical engineering Ph.D.'s. [ECF No. 40 at ¶¶ 49-52]. The accused products are state-of-the art devices "including all read channel/SOC HDD Chips currently sold under the tradename TrueStore[.]" [ECF No. 40 at ¶ 75.] Such products involve "immensely tricky" technology. [*Id.* at ¶ 37.] The legal issues at play include, for example: the proper construction of the patent's highly technical claims (a legal issue for the Court); whether the claims are infringed, not invalid, and not unenforceable; and potentially, damages.

The University filed its original Complaint on August 25, 2016. [ECF No. 1.] On October 26, 2016, Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6). [ECF No. 33.] Instead of opposing, the University filed a First Amended Complaint. [ECF No. 40 (November 11, 2016).] Defendants renewed their motion to dismiss, [ECF No. 45 (November 28)], and the Court heard argument on January 13, 2017.

Shortly thereafter, as mentioned above, Defendants filed a Petition for IPR of the '601 patent under 35 U.S.C. § 311. Case IPR2017-01068 (filed March 10, 2017). The Petition asks the Patent Office to cancel claims of the asserted '601 patent because such claims are unpatentable over certain "prior art" patents.

In the meantime, while the Rule 12(b)(6) motion was *sub judice*, the Supreme Court issued its *TC Heartland* decision on May 22, 2017. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017).[2] The Court changed the venue rules for patent cases such that a corporate defendant is no longer deemed to "reside" in any district having personal jurisdiction, which is how the law was understood for several decades; now, such a defendant resides only in its "State of incorporation." *Id.* at 1521.

On June 29, 2017, this Court denied the Rule 12(b)(6) motion. Fourteen days later, LSI timely filed an Answer with Counterclaims and Avago U.S. moved to dismiss under the new patent venue rule announced in *TC Heartland*. [ECF Nos. 59 and 62.]

**I.    LEGAL STANDARDS**

    **A.    Standard For Transferring Venue Under 28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a).[3] A court faced with a motion to transfer venue must undertake a two-part inquiry. "The initial question . . . is whether the action might have been brought in the proposed transferee district. If so, the Court must [then] consider the convenience and interest of justice factors." *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1136 (D. Minn. 2009) (citation omitted). The Eighth Circuit has

---

[2] The Petition for *Certiorari* in *TC Heartland* was granted on December 14, 2016.

[3] Avago U.S. has also moved for dismissal based on improper venue. [*See* ECF No. 59.] "Congress, in passing § 1404(a), was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one." *In re Apple*, 602 F.3d at 912 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964)).

- 4 -

declined to offer an "exhaustive list of specific factors to consider," but "district courts should weigh any case-specific factors relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (internal quotations and citations omitted).

### B. Standard for Staying Pending *Inter Partes* Review

A civil action should be stayed pending IPR proceedings if: (1) the non-movant would not be "unduly prejudiced"; (2) the stay could "simplify the issues in question"; (3) "discovery is [not] complete and [no] . . . trial date has been set"; and (4) a stay can reduce "the burden of litigation on the court and the parties." *Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361-62 (Fed. Cir. 2016). *See Oticon A/S v. GN Resound A/S*, No. 15-CV-2066 (PJS/HB), 2015 WL 5752429, (D. Minn. Aug. 5, 2015) (staying case pending IPR); *Intellectual Ventures II LLC v. U.S. Bancorp, No*. CIV. 13-2071 ADM/JSM, 2014 WL 5369386 (D. Minn. Aug. 7, 2014) (same); *see also Landis v. N. Amer. Co*., 299 U.S. 248, 254-55 (1936).

## II. THE CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404

### A. Suit Could Have Been Brought in the Northern District of California

This case could have "been brought" in the Northern District of California. 28 U.S.C. § 1404(a). A patent case "may be brought … where the defendant … has a regular and established place of business," 28 U.S.C. § 1400(b), and LSI and Avago U.S. each have a "principal place of business" in "San Jose, California." [ECF No. 40 at ¶¶ 10, 12.] Therefore, this action could have been brought in the Northern District of

California. The Court should therefore evaluate the convenience and interest of justice factors. These factors are discussed next.

### B. The Case Should Be Transferred to the Northern District of California for the Convenience of the Parties and in the Interests of Justice

There are "three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). District courts should weigh any "case-specific factors" relevant to convenience and fairness to determine whether transfer is warranted. *In re Apple, Inc.*, 602 F.3d at 912 (ordering transfer to Northern District of California).

As discussed below, multiple case-specific factors show that the Northern District of California is a far more convenient and fair venue for this action.

### C. Source of Proof are More Easily Accessed in the Northern District of California than in this District

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendants' documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345-46 (Fed. Cir. 2009). Here, "the bulk" of the evidence is in California. *Id*.

First, LSI houses its corporate documents and tangible things relating to the development, manufacturing, and marketing of the accused infringing products in its headquarters in San Jose, which is in the transferee venue. [Decl. of Shaohua Yang, Ph.D.] Such evidence includes: documents related to the design and development of the

accused products; physical prototypes of products; and documents related to the sales, licensing, and marketing of LSI's products.  [*See id.*]

Second, while "Avago U.S. has handled the U.S. sale and distribution of LSI products, including the [accused] product line of SOCs sold under the TrueStore tradename," [ECF No. 40 at ¶ 17], Avago U.S. does not have any physical buildings or offices in this District.  [Decl. of Todd Leone].  Having no office space in this District, Avago U.S. houses its corporate documents relating to sales and distribution of the accused infringing products in its San Jose headquarters.  [Decl. of Shaohua Yang, Ph.D.]

Third, the University does not have *any* real infringement evidence in Minnesota. In particular, the University complained that it was impossible for it to have set forth detailed factual allegations of infringement in the First Amended Complaint because the accused products allegedly "cannot be reverse-engineered to confirm their use of [allegedly patented] MTR code."  [*See* ECF No. 56 at 2, 5; ECF No. 48 at 13.]  The University admittedly cannot set forth a *prima facie* case of infringement without obtaining evidence from the Defendants.  That evidence is in California.

As such, keeping the case here "will impose a significant and unnecessary burden on the [Defendants] to transport documents that would not be incurred if the case were to proceed in the Northern District of California."  *In re Genentech, Inc.*, 566 F.3d at 1345-46; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) ("Because all of the physical evidence...and documentary evidence, are far more conveniently located near the [transferee venue], the district court erred in not weighing this factor in favor of transfer"); *In re Apple, Inc.*, 602 F.3d at 914 ("Apple contends, and Luxpro does not

seriously dispute, that much of Apple's relevant documentary evidence is located in its Cupertino headquarters. . . . [I]f the need arises to refer to original documents or evidence in the litigation, Northern California would prove more convenient."); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199-1200 (Fed. Cir. 2009) ("[M]ost evidence resides in Washington or Japan[.]")

The fact that the bulk of the relevant evidence is in California is a case-specific factor tipping strongly in favor of transferring venue.

### D. The Northern District of California is Far More Convenient for Most Witnesses

The convenience of witnesses is generally regarded as "the most important factor in the transfer analysis[.]" *Austin*, 677 F. Supp. 2d at 1138 (citing 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3849 at 199 (3d ed.2007)); *accord*, *In re Genentech, Inc*. 566 F.3d at 1343 ("[T]he convenience for and cost of attendance of witnesses" is "an important factor.")

The Court "must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991). The focus is on non-party witnesses, since "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *Austin*, 677 F. Supp. 2d at 1138 (citation omitted).

1.     **The Northern District of California is Far More Convenient for Most Party Witnesses**

The Northern District of California is more convenient for Defendants' witnesses. LSI and Avago U.S.'s technical leadership team works out of headquarters in in San Jose. Indeed, the three "senior executives" that the University mentioned specifically by name in the First Amended Complaint work in the Northern District of California:

- Dr. Shaohua Yang is Director of Architecture at Avago Technologies. [Decl. of Shaohua Yang, Ph.D.] The University alleges that Dr. Yang has knowledge of the accused products and the Defendants' alleged pre-suit knowledge of infringement. [*See* ECF No. 40 at ¶¶ 78, 79, 141, 142, 155.]

- Dr. Yuan Xing Lee is the Vice President and Head, Central Engineering, at Broadcom Limited.[4] The University also alleges that Dr. Lee has knowledge of the accused products and the Defendants' alleged pre-suit knowledge of infringement. [ECF No. 40 at ¶¶ 81-85, 88, 90, 91, 135-37, 144-50.]

- Dr. Bruce Wilson is Director of Architecture at Broadcom Limited. The University alleges that Dr. Wilson also has knowledge of the accused products and the Defendants' alleged pre-suit knowledge of infringement. [ECF No. 40 at ¶¶ 138-40.]

---

[4] Broadcom Limited is affiliated with the Defendants.

Forcing Defendants' senior technical leadership team to travel to this District for trial or hearings would impose a significant burden on them and would interfere with Defendants' business operations.  This would also cause disruption in their home and personal lives.  Further, attendance of such witnesses at trial here would require them to purchase roundtrip airfare, and make hotel and rental car accommodations, whereas trial in the Northern District of California would not require such additional expenditures (or would at least require substantially less expenditures).

In contrast, the University is not likely to have many (or perhaps any) important witnesses in this District.  The University does not produce or sell products covered by the '601 patent, and as noted previously, the University admits that it does not have any real evidence showing infringement because the accused products "cannot be reverse-engineered to confirm" infringement.  [ECF No. 48 at 13.]  Even if the University has any witnesses that would need to travel to the Northern District of California, any inconvenience is substantially outweighed by the inconvenience to Defendants' party witnesses.  *In re Nintendo*, 589 F.3d at 1198; *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).

That the Northern District of California is more convenient for most of the key party witnesses strongly favors transfer.  *In re Apple*, 602 F.3d at 913 ("If Apple's California witnesses were required to travel to Arkansas, Apple would likely incur expenses for airfare, meals and lodging, and losses in productivity from time spent away from work."); *In re Genentech*, 566 F.3d at 1345 (finding that defendants were headquartered in California and some of its witnesses would be inconvenienced by

having to attend trial in Texas which "favored transfer, and not only slightly."); *In re Nintendo*, 589 F.3d at 1198; *In re Microsoft*, 630 F.3d at 1364.

### 2. The Northern District of California is Far More Convenient for Most Non-Party Witnesses

The Defendants have identified numerous relevant third party witnesses that reside in the Northern District of California, or elsewhere in California.

<u>*Former employees*</u>:  Several former party employees reside in the Northern District of California.  For example, Jack Xu was a digital designer with LSI from 2007 to 2011.  He current resides in Fremont, California.  As a result of Mr. Xu's experience, he is likely to be knowledgeable about the accused products and the general state of the art in the relevant field of technology.  [*See* Decl. of Shaohua Yang, Ph.D.]  Victor Krachkovsky and Razmik Karabed are additional examples of former employees having similar knowledge.  Messrs. Krachkovsky and  Karabed both reside in San Jose.  [*Id*.]

<u>*Customer documents and witnesses*</u>:  The University cryptically alleges that the Defendants "direct, instruct, and assist" their "customers regarding the use of" allegedly infringing products.  [ECF No. 40 at *e.g*., ¶¶ 103-108.]  These allegations are made in support of the University's claims for indirect infringement.  A major customer of the Defendants' is Seagate Technology PLC ("Seagate"), [ECF No. 40 at 20], which is headquartered in Cupertino, California, within the Northern District of California.  The University also references HGST, Inc. ("HGST"), [*id.*], which is headquartered in San Jose.  [Decl. of Shaohua Yang Ph.D.]

In light of the University's allegations regarding "customers," Seagate and HGST may have in their custody potentially relevant documents, and they each have employees who likely can provide relevant testimony regarding the accused infringing products and services. These corporate documents and witnesses are likely in the Northern District of California, because that is where these "customer" companies are headquartered.

*Licensing documents and witnesses*:  Defendants suspected that Seagate may have a license to the '601 patent because the named inventors on the '601 patent authored a published paper stating that the work leading up to the patent "was supported in part by Seagate Technology." [*See* ECF No. 40-3;] When pressed by defense counsel, counsel for the University finally confirmed in an email of January 31, 2017 that "it does appear that Seagate has certain rights with respect to the '601 patent." [ECF No. 62 at ¶¶ 71-74.] This admission is important because the University alleges that Defendants are liable for "inducing" Seagate to directly infringe the patent. If Seagate has a license, then it does not infringe, which means that the Defendants do not induce infringement.

Since Seagate is headquartered in Cupertino, California, the witnesses and documents relevant to Seagate's "rights with respect to the '601 patent" are likely to be located in the Northern District of California. This evidence is relevant to several affirmative defenses, including license and patent exhaustion. Additionally, if Seagate sells licensed products that are not "marked" with the number of the '601 patent, then the University itself cannot recover any pre-suit damages for infringement of certain patent claims. *See* 35 U.S.C. § 287(a).

*Prior art documents and witnesses*:  Named inventors of several relevant prior art references also live in California, and certain relevant documents are likely to be located in California.  This is to be expected given the heavy concentration of technology companies in California, particularly in Northern California.

As one example, Seagate owns U.S. Patent No. 5,731,768 ("the Tsang patent").  As explained in LSI's counterclaim for a declaratory judgment that the '601 patent is unenforceable for inequitable conduct, Seagate filed its Tsang patent before the University filed for its '601 patent.  Many aspects of the Tsang patent are strikingly similar to key aspects of the '601 patent.  For example, the titles are almost identical, the patents contain similar disclosures, and the patents claim the same inventions.  The Tsang patent therefore anticipates the '601 patent, rendering it invalid.  And since the University intentionally withheld the existence of the Tsang patent from the Patent Office to gain allowance of the '601 patent, the patent is unenforceable.  [*See* Dkt. No. 62 at ¶¶ 53-75.]

The first named inventor of the Tsang patent is deceased but Seagate likely possesses relevant documents in its Cupertino, California headquarters.  Since Seagate is a key player in the industry, it is likely that many of Seagate's current and former employees in the Bay area have knowledge of additional prior art.

Just as the Defendants' party witnesses would be greatly inconvenienced by being pulled away from their normal work and home duties if they have to travel to this District for trial or hearings, these numerous third party witnesses would also be inconvenienced and would have to purchase airline tickets, hotel rooms, and rental cars.  This strongly favors transfer to the Northern District of California.

### E.     More Witnesses Are Within the Subpoena Power of the Northern District of California

The majority if not all of the foreseeable relevant witnesses (party and non-party) in this case appear to be located outside of this Court's absolute subpoena power and could not be compelled to appear at trial in this District, because they work and reside more than 100 miles from this Court and outside of Minnesota.  Fed. R. Civ. P. 45(c); 45(d)(3)(A)(ii).  But many potential third party witnesses are within the subpoena power of the Northern District of California, as discussed above.  These witnesses may be unwilling to appear to testify at trial, absent a subpoena requiring them to do so.  While some of these witnesses may be outside the Northern District of California, they are nonetheless subject to compulsory process in the Northern District of California because they reside in California.  Fed. R. Civ. P. 45(c)(1).

The fact that the Northern District of California has "usable subpoena power . . . weighs in favor of transfer, and not only slightly."  *In re Genentech*, 566 F.3d at 1345.[5]

### F.     The Interest of Justice Factors Favor Transfer

As shown above, the "convenience factors" favor transfer.  The "interest of justice" factors include "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to

---

[5] And this factor still weighs in favor of transfer, even if not all of the potential witnesses are within the subpoena power of the Northern District of California.  *See Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-CV-511-CE, 2010 WL 2950351, at *2-3 (E.D. Tex. July 22, 2010) (finding that this factor weighed in favor of transfer where "[n]o district court has absolute subpoena power over all of the likely witnesses," but "the Northern District of California's subpoena power over some witnesses must be considered") (citations omitted).

enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d at 696.   Not every factor is relevant in every case.

Here, factors (1) and (3) above strongly favor a transfer of venue to the Northern District of California, and the other factors are neutral.

*Judicial economy*:  This District has two judicial vacancies, which favors transfer. Moreover, currently, the median time to trial in civil cases in the Northern District of California is less than it is in this District.[6]

*Plaintiff's choice of forum*:  While a plaintiff's choice of forum is in general given some deference, this general practice "is based on an assumption that the plaintiff's choice will be a convenient one." *In re Apple, Inc.*, 602 F.3d at 913 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).  The plaintiff's choice "in and of itself, does [nothing] more than shift the burden of proof to a movant seeking transfer under § 1404(a)." *Id*.  As shown above, this forum is grossly inconvenient for most party and non-party witnesses, and very little if any other evidence is likely to be found in this District.  The bulk of the evidence is in California.  As such, the University's choice of forum does not carry much weight.  This factor is therefore neutral.

*Comparative costs of litigation*:  As discussed above, it will cost the Defendants much more to litigate in this inconvenient forum, because most of the corporate evidence and witnesses are located in and around the headquarters in San Jose, California.  Since the University admittedly lacks any concrete evidence of infringement, the University's

---

[6] http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2017.pdf.

costs in litigating are roughly the same in any forum. This factor strongly favors transferring venue. *See In re Genentech, Inc.*, 566 F.3d at 1345-46; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008); *In re Apple*, 602 F.3d at 914; *In re Nintendo*, 589 F.3d at 1199-1200 .

*Other factors*: The remaining factors are neutral. There are no foreseeable issues with an ability to enforce judgment or obstacles to a fair trial, and there are no known issues of local law that will need to be decided in this patent case.

Given the foregoing considerations, Defendants submit that this case should be transferred. *See In re Nintendo*, 589 F.3d at 1198 ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer"); *In re Microsoft*, 630 F.3d at 1364 (ordering transfer); *In re Genentech*, 566 F.3d at 1345 (same); *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1254-55 (Fed. Cir. 2010) (same).

### III.    ALTERNATIVELY, THIS CASE SHOULD BE STAYED PENDING PROCEEDINGS IN IPR2017-01068

This case should be stayed pending IPR2017-01068, wherein the Patent Office will consider the validity of '601 patent claims. All of the relevant factors favor a stay.

#### A.    The University Will not be Unduly Prejudiced by a Stay

The University cannot be heard to complain of undue prejudice if the case is stayed because the '601 patent is already expired, and in any event the University does not compete with the Defendants. The fact that the only potential remedy at issue is past damages strongly favors a stay. *See Murata Mach. USA*, 830 F.3d at 1361-62.

## B. The IPR Proceedings can Simplify or Moot This Case

The IPR proceedings will simplify issues in this case because the PTAB will construe the '601 patent's claims. Clarity on claim scope will benefit the Court and the parties alike. Perhaps more importantly, the PTAB will decide whether the '601 patent claims are invalid. Either way, the issues will be simplified. And any claims that are cancelled in the IPR are dead for the purposes of this case. The IPR has the potential to entirely moot this case if all of the asserted claims are invalidated. This factor also strongly favors a stay. *See Murata Mach. USA*, 830 F.3d at 1361-62.

## C. Discovery is Not Complete and no Trial Date has Been Set

This case is at its earliest stages; discovery is not complete and the case is not close to being ready for trial. This third factor also strongly favors a stay. *See id.*

## D. A Stay Will Reduce the Burdens of Litigation on the Court and Parties

Litigating overlapping issues in different forums is hardly an efficient use of this Court's or of the parties' resources. This fourth factor strongly favors a stay. *See id.*

In sum, the stay factors strongly favor a stay pending IPR proceedings. *See Oticon A/S v. GN Resound A/S*, No. 15-CV-2066 (PJS/HB), 2015 WL 5752429, (D. Minn. Aug. 5, 2015) (ordering a stay pending IPR); *Intellectual Ventures II LLC v. U.S. Bancorp, No.* CIV. 13-2071 ADM/JSM, 2014 WL 5369386 (D. Minn. Aug. 7, 2014) (same).

## **CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

The Court should transfer this case to the Northern District of California under 28 U.S.C. § 1404(a). As discussed above, virtually no relevant documents, physical

evidence, or witnesses are likely located in this District.  Such evidence is located in the Northern District of California and/or is subject to its subpoena power.

Alternatively, the Court should stay this litigation pending the IPR proceedings involving the expired '601 patent.  A stay is particularly appropriate because this case is at an early stage; the University will not be prejudiced by a stay; the IPR process can moot this case and it will at least provide simplification of issues and streamlining; and a stay would ease the litigation burdens on this Court and on the parties.

**BASSFORD REMELE**
*A Professional Association*

Dated: July 26, 2017

By */s/ Jessica L. Klander*
Lewis A. Remele, Jr. (MN #90724)
Jessica L. Klander (MN #392290)
Attorneys for Defendants
33 South Sixth Street, Suite 3800
Minneapolis, Minnesota  55402-3707
Telephone:   (612) 333-3000
Facsimile:    (612) 333-8829
lremele@bassford.com
jklander@bassford.com

**KILPATRICK, TOWNSEND & STOCKTON LLP**

By */s/ Edward J. Mayle*
David E. Sipiora (CO # 29759) (*pro hac vice*)
Edward J. Mayle (VA #80667) (*pro hac vice*)
1400 Wewatta Street, Suite 600
Denver, Colorado  80202
Telephone: (303) 405-8528
Facsimile: (303) 593-3905
dsipiora@kilpatricktownsend.com
TMayle@kilpatricktownsend.com

*Attorneys for Defendants*

1694326.docx

- 18 -