# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

_____

REGENTS OF THE UNIVERSITY
OF MINNESOTA,

       Plaintiff,

vs.

LSI CORPORATION and AVAGO
TECHNOLOGIES U.S. INC.,

       Defendants.

Court File No. 16-cv-02891-WMW-SER

**DEFENDANT AVAGO TECHNOLOGIES
U.S. INC.'S REPLY IN FURTHER
SUPPORT OF MOTION TO DISMISS
FOR IMPROPER VENUE**

_____

## INTRODUCTION

Venue is improper as to Avago Technologies U.S. Inc. ("Avago U.S.") because it does not infringe in this District or have a "regular and established place of business" here. Unable to point to any allegation in its First Amended Complaint ("Complaint") identifying a regular and established place of business in Minnesota for Avago U.S., the University spends the bulk of its brief making two incorrect procedural arguments. First, the University, as the plaintiff, bears the burden of establishing that its chosen venue is proper and the University has failed that burden. It is not Avago U.S.'s burden to show that venue is improper. Second, Avago U.S. did not "waive" its venue defense because the Supreme Court's *TC Heartland* decision was an intervening change in the law, as this

Court has twice held.  Accordingly, venue is not proper and the Complaint should be dismissed.[1]

## ARGUMENT

### I.   As Plaintiff, the University Has the Burden of Showing Proper Venue

Because the University never actually pleaded a valid basis for venue under either alternative prong of 28 U.S.C. § 1400(b) [*see* ECF No. 59 at 4], it contends that Avago U.S. bears the burden to show that it has no "regular and established place of business" here.  [*See* ECF No. 70 at 10-11, 22-23.]  The University has it backwards: the plaintiff bears the burden of showing that its chosen venue is proper.

#### A.   The University's Cited Cases are Not Controlling

As an initial matter, none of the cases the University cites in support of its burden-flipping argument addresses 28 U.S.C. § 1400(b).  None are binding.  And all are contrary to the weight of authority which holds that the plaintiff bears the burden of establishing that its chosen venue is proper.

Specifically, the University relies on district court opinions involving the general venue statute, 28 U.S.C. § 1391,[2] not the patent-specific statute § 1400(b).  These

---

[1] The University is not without an alternative forum.  The Northern District of California is available as a forum because both Defendants have their principal places of business in San Jose, California, within that district.  Avago U.S. and co-defendant LSI Corporation have moved to transfer venue because all relevant factors favor that district as by far the most logical and convenient location for this patent infringement case.

[2] *See Transocean Grp. Holdings Pty Ltd. v. S.D. Soybean Processors, LLC*, 505 F. Supp. 2d 573 (D. Minn. 2007); *Metro Sales, Inc., v. Core Consulting Grp., LLC*, No. 15-3233 (DWF/JSM), 2016 WL 912183 (D. Minn. Mar. 7, 2016); *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720 (RHK/JJG), 2009 WL 1684428 (D. Minn. June 16, 2009).

opinions rely on the Eighth Circuit's seventy-year old opinion in *United States v. Orshek*, 164 F.2d 741, 741-42 (8th Cir. 1947).  But *Orshek* is not controlling because the patent-specific statute, § 1400(b), is governed by Federal Circuit law.[3]  In any event, the Eighth Circuit has more recently held that the plaintiff has "the burden of establishing facts to support his claim to venue in the District of Minnesota[.]"  *Cohen v. Newsweek, Inc*., 312 F.2d 76, 78 (8th Cir. 1963).

### B.     The Weight of Authority Holds that the Plaintiff Has the Burden To Establish Proper Venue

As noted above, the Eighth Circuit held in *Cohen* that the plaintiff has the burden of establishing facts to support its claim for venue.  312 F.2d 76 at 78.  Similarly, recent opinions from this District put the burden on pleading venue under § 1400(b) on the plaintiff.[4]  Those opinions are in line with the majority rule.  Wright & Miller, *Federal*

---

[3] *See Sulzer Textil A.G. v. Picanol N.V*., 358 F.3d 1356, 1363 (Fed. Cir. 2004) ("[W]e will apply our own law to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'") (quoting *Viam Corp. v. Iowa Export-Import Trading Co*., 84 F.3d 424, 428 (Fed. Cir. 1996)).  Congress created the Federal Circuit in 1982 to provide national uniformity in patent law.  *See* H.R. Rep. No. 97-312, at 23 ("central purpose [of creating Federal Circuit was] to reduce the widespread lack of uniformity and uncertainty of legal doctrine that exist[ed] in the administration of patent law").  The Federal Circuit has not yet opined on the allocation of burden under § 1400, but as explained below the majority of courts put the burden on the plaintiff.

[4] *See The Valspar Corp. & Valspar Sourcing, Inc. v. PPG Indus., Inc*., No. 16-CV-1429 (SRN/SER), 2017 WL 3382063, at *5 (D. Minn. Aug. 4, 2017) ("Once a defendant has raised an objection to venue, the burden is on the plaintiff to demonstrate that venue is properly laid.") (transferring venue); *see also QFO Labs, Inc. v. Parrot, Inc*., No. 16-CV-3443 (JRT/HB), 2017 WL 2638389, at *6 (D. Minn. May 26, 2017), *report and recommendation adopted*, No. CV 16-3443 (JRT/HB), 2017 WL 2634155 (D. Minn. June 19, 2017) ("Neither the Complaint nor the Amended Complaint allege that Parrot, Inc., 'has a regular and established place of business' in the state of Minnesota.  Accordingly, the allegations in the Complaint do not establish that Minnesota is a proper venue for this patent action against Parrot, Inc.") (dismissing).

*Practice and Procedure* § 1352 (3d ed. 2002) ("On the other hand, an equal (perhaps a larger) number of federal courts have imposed the burden on the plaintiff in keeping with the rule applied in the context of subject matter and personal jurisdiction defenses. The latter view seems correct[.]") (collecting many cases). Thus, to the extent that there is any split within the Eighth Circuit or between the other regional courts of appeal, this Court should follow the better reasoned cases which align venue with jurisdiction and place the burden on the plaintiff. *Id*.

## II.   Avago U.S. Did Not Waive its Venue Defense

### A.   As This Court and Many Others Have Held, *TC Heartland* was an "Intervening Change in the Law" of Venue in Patent Cases

The University argues that Avago U.S. "waived" its objection to venue and "now attempts to raise a venue defense through a ***third*** Rule 12 motion." [ECF No. 70 at 12 (emphasis by the University).] There was no waiver and calling this a "third" motion is misleading. Instead of opposing the Rule 12(b)(6) motion filed on October 26, 2016, the University filed a First Amended Complaint. Defendants therefore renewed their motion on November 28, 2016, before the petition for certiorari in *TC Heartland* was even granted. Avago U.S. is not clairvoyant and could not have known that the Supreme Court would grant certiorari or that it would change the law on May 22, 2017.

The University did not foresee this change in the law, either. Otherwise, it would have attempted to plead proper venue under 28 U.S.C. § 1400(b), but it did not. Instead, the University asserted that venue is proper based **solely** on the allegation that "Defendants are subject to personal jurisdiction in, and so reside in, this district." [Dkt.

4

No. 40 at ¶ 31.]  After *TC Heartland*, this is not the law.  137 S. Ct. at 1521 ("As applied to domestic corporations, 'reside[nce] in § 1400(b) refers only to the State of incorporation.")  Importantly, the University did not allege that Avago U.S. has a "regular and established place of business" in this District, which is what § 1400(b) requires.  And contrary to its position in opposition to this Motion that no change has occurred in the law, the University's lead counsel has correctly stated that *TC Heartland* is "a sea change" in patent litigation:[5]



**Supreme Court Restricts Where Plaintiffs Can Sue for Patent Infringement**

By: Patrick McElhinny and Anna Shabalov

For almost thirty years, patent owners sued corporate defendants for patent infringement in any federal judicial district in which that corporation was subject to the court's personal jurisdiction.  When corporate defendants sold accused products nationwide, venue could be proper in every federal judicial district in the country.  As a result, jurisdictions perceived to be favorable to patent owners, such as the Eastern District of Texas, handled an enormous and disproportionate share of the nation's patent docket.

Regardless of the outcome, this decision portends a sea change in patent litigation.  Patent owners may no longer default to forums generally perceived to be favorable to them.  Restrictions on forum selection may make patent owners less anxious about racing to the courthouse to avoid a preemptive declaratory judgment action and more willing to attempt to negotiate a license first.  The cost of litigation may increase for patent owners forced to litigate in forums where defendants have a substantial presence.  The crowded docket of the Eastern District of Texas may move to the District of Delaware, potentially increasing time to trial not only for patent cases but also for the substantial business disputes commonly handled there.

---

[5]      *See*      http://www.klgates.com/supreme-court-restricts-where-plaintiffs-can-sue-for-patent-infringement-05-25-2017/ (by Patrick J. McElhinny and Anna Shabalov, counsel of record for the University in this case) (highlighting added, accessed Aug. 11, 2017).

The question under Fed. R. Civ. P. 12(g)(2) is whether Avago U.S.'s venue defense was "available" before the *TC Heartland* opinion was issued. Clearly, it was not. This Court has twice rejected the same waiver argument pressed by the University in this case. *See The Valspar Corp., v. PPG Indus., Inc.*, No. 16-CV-1429 (SRN/SER), 2017 WL 3382063, at *3("Several district courts have considered precisely this same issue— whether *TC Heartland* constituted an 'intervening change in the law' sufficient to excuse waiver—in the wake of the Supreme Court's decision. A number of these courts have found that *TC Heartland* is not an intervening change in the law because it merely corrected a twenty-seven year-long error of the Federal Circuit and reaffirmed the standard first expounded in *Fourco*. . . . Having carefully considered the matter, however, the Court must respectfully disagree.") (D. Minn. Aug. 4, 2017) (rejecting waiver argument and transferring venue); *see also Cutsforth, Inc. v. LEMM Liquidating Co*., LLC, No. 12-CV-1200 (SRN/LIB), 2017 WL 3381816 (D. Minn. Aug. 4, 2017) (same). As this Court held, "[i]t is illogical and unfair to argue that [the defendant] erred by not making an argument [venue is improper under § 1400(b)] that both this Court and the parties knew would have been rejected—just as it had consistently been rejected around the country for a quarter of a century." *Valspar*, 2017 WL 3382063, at *4.

In *Cutsforth*, this Court rejected a waiver argument even though the case was filed five years before *TC Heartland*, the litigation was at an advance stage, and the Court was in preparing its claim construction order. *Id*., 2017 WL 3381816, at *1-*2 ("Despite the lateness of the request and the advanced state of this litigation, the Court agreed to consider Defendants' motion[.]") In *Valspar* the defendant had filed a pre-*TC Heartland*

answer admitting that venue was proper in the District of Minnesota, but the defense was not waived.  *See id*., at *1.  ("[A]t all times prior to filing this motion, [defendant] conceded that venue was technically proper in Minnesota under prevailing law.")[6]

This Court's opinions in *Valspar* and *Cutsforth* are well-reasoned and correct. The Court should therefore adopt the reasoning of those opinions and reject the University's waiver argument here.  Contrary to the University's suggestions, many courts have rejected the Draconian view on waiver that the University advances here:

**(1)**   *Valspar*, 2017 WL 3382063, *supra* (transferring venue in case where defendant had previously admitted venue was proper in its answer);

**(2)**   *Cutsforth*, 2017 WL 3381816, *supra* (transferring venue just before Court was preparing claim construction order—case was filed five years before *TC Heartland*);

**(3)**   *POWERbahn, LLC v. Foundation Fitness LLC*, No. 3:15-cv-00327-MMD-WGC (D. Nev. Aug. 7, 2017) ("*TC Heartland* thus presented an intervening change in the law, giving Wahoo a legal basis to assert an otherwise waived venue objection") (transferring venue) (attached as Ex. 1 to the Declaration of Edward J. Mayle).

**(4)**   *Westech Aerosol Corp. v. ITW Polymers Sealants N. Amer. Inc.*., No. C17-5068-RBL (W.D. Wash. Aug. 7, 2017) (*sua sponte* order finding that Complaint does not

---

[6] Defense counsel in *Cutsforth,* lawyers from the firm of K&L Gates, told the Court that the plaintiff in that case "will argue that Defendants have waived any challenge to venue, but the holding of *TC Heartland* represents a drastic shift in the law of venue."  [Case No. 0:12-cv-01200-SRN-LIB, ECF No. 404 at 1.]  Counsel also argued that "*TC Heartland* must be given retroactive effect."  [*Id*. at 5-6 (citing cases).]  That is correct— *TC Heartland* changed the law and it applies retroactively, just as it did in *Cutsforth*.

plead proper venue after *TC Heartland*, defendant had filed pre-*TC Heartland* Rule 12(b)(6) motion, *see* ECF No. 24 in that case) (attached as Mayle Decl., Ex. 2);

**(5)**   *Ironburg Inventions Ltd. v. Valve Corp.*, No. 1:15-cv-4219-TWT, 2017 WL 3307657 (N.D. Ga. Aug. 3, 2017) ("[T]he Court finds that *TC Heartland* is an intervening change in the law") (transferring venue);

**(6)**   *Cf. IPS Group, Inc. v. Civicsmart, Inc.*, No. 3:17-cv-0632-CAB-(MDD) (S.D. Cal. Aug. 1, 2017) ("The Supreme Court's decision in *TC Heartland* intervened[.]") (ordering oral argument) (attached as Mayle Decl., Ex. 3);

**(7)**   *CG Tech. Development, LLC v. Fanduel, Inc.*, No. 2:16-cv-00801-RCJ-VCF, 2017 WL 3207233, at *2 (D. Nev. July 27, 2017) ("Before *TC Heartland*, the law litigants faced was *VE Holding*. . . .[T]he Courts of Appeals to have decided the issue . . . have uniformly held that under such circumstances a circuit-precluded defense is not 'available' for the purposes of waiver.  Even if *TC Heartland* had simply reaffirmed the Court's interpretation of § 1400(b) while ignoring § 1391 and *VE Holding*, a finding that Movants should also have done so would not give fair consideration to the practical realities upon which the equitable concept of waiver is based.") (transferring venue);

**(8)**   *OptoLum, Inc. v. Cree, Inc.*, No. CV-16-03828-PHX-DLR, 2017 WL 3130642, at *3 (D. Ariz. July 24, 2017) ("*TC Heartland* changed the venue landscape just as *VE Holding* had done 27 years earlier") (transferring venue);

**(9)**   *Hand Held Prod., Inc. v. Code Corp.*, No. CV 2:17-167-RMG, 2017 WL 3085859, at *3 (D.S.C. July 18, 2017) ("It would be inequitable to deny Code the opportunity to seek proper venue, where no prejudice results to Plaintiff, simply because

Code missed the venue-challenge deadline by 34 days because it reasonably relied on what nearly every litigant thought was binding precedent governing patent litigation venue for the past 27 years.") (transferring venue);

(10) *Westech Aerosol Corp. v. 3M Co.*, No. C17-5067-RBL, 2017 WL 2671297, at *2 (W.D. Wash. June 21, 2017) ("*TC Heartland* changed the venue landscape. For the first time in 27 years, a defendant may argue credibly that venue is improper in a judicial district where it is subject to a court's personal jurisdiction but where it is not incorporated and has no regular and established place of business. Defendants could not have reasonably anticipated this sea change[.]") (granting leave to amend motion);

(11) *McGinley v. Luv n' care, Ltd.*, No. 4:16-CV-W-00283-FJG, 2017 WL 2729101, at *1 (W.D. Mo. June 23, 2017) (transferring venue on unopposed motion to reconsider court's pre-*TC Heartland* ruling that venue was proper).

(12) *QFO Labs,* No. 16-CV-3443 (JRT/HB), 2017 WL 2638389, at *6, *report and recommendation adopted*, No. CV 16-3443 (JRT/HB), 2017 WL 2634155 (Dist. of Minn. Chief Judge Tunheim) ("Neither the Complaint nor the Amended Complaint allege that Parrot, Inc., 'has a regular and established place of business' in the state of Minnesota. Accordingly, the allegations in the Complaint do not establish that Minnesota is a proper venue for this patent action against Parrot, Inc.") (dismissing where *TC Heartland* was raised in reply brief, *see* ECF No. 53 in that case and 2017 WL 2638389 at *6 n.5).

The University does not cite any opinion from this District that supports its position on waiver, and the opinions that it relies on are wrong, as this Court explained in *Valspar* and *Cutsforth*. Tellingly, seven of the cases the University relies on are from the

Eastern District of Texas.   That district's hospitality toward patent cases is widely regarded as the main reason that the Supreme Court granted certiorari in *TC Heartland*.[7]

### B.  The University's "Equity" Argument Fails

The University argues that Avago U.S. should have filed its motion sooner, perhaps as soon as the Supreme Court granted certiorari in *TC Heartland*.  [ECF No. 70 at 21.]  But it would have been futile to do so before the *TC Heartland* Court changed the law of venue for patent cases.  *See Valspar*, 2017 WL 3382063; *Cutsforth*, 2017 WL 338181.  Avago U.S.'s motion was therefore timely under Fed. R. Civ. P. 12(a)(4)(A).

Even if this Court contradicts *Valspar* and *Cutsforth* and finds that *TC Heartland* was not "technically" a change in the law (and it should not), equitable principles show that the motion to dismiss was not waived.  In particular, the University offers no argument that it is prejudiced by the motion.  [*See* ECF No. 70 at 21, n.9.]  It could not do so because Avago U.S. has not filed an Answer; the motion to dismiss was filed before discovery commenced; the case is not ready for trial; the patent-in-suit expired last

---

[7]  *See*  http://www.klgates.com/supreme-court-restricts-where-plaintiffs-can-sue-for-patent-infringement-05-25-2017/ ("[J]urisdictions perceived to be favorable to patent owners, such as the Eastern District of Texas, handled an enormous and disproportionate share of the nation's patent docket.") (by Patrick J. McElhinny and Anna Shabalov, accessed Aug. 11, 2017); House Judiciary Committee, IP Subcommittee Hearing, "The Supreme Court's *TC Heartland* Decision," June 13, 2017, Testimony by Colleen Chien, at 2 ("When given the opportunity to restore the law to where it had been for most of its 200+ year history, and make it harder for trolls to file in Texas, the Supreme Court did so in TC Heartland.") (available at https://judiciary.house.gov/wp-content/uploads/2017/06/06.13.17-Chien-Testimony.pdf, accessed Aug. 13, 2017).  *Cf. In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) (ordering Eastern District of Texas to transfer the patent action to the Northern District of California under § 1404(a)).

October; and the University does not sell products or compete with Defendants.  Because the patent is expired, the University's only potential remedy is past money damages.[8]

The motion has merit and was filed for a valid reason, contrary to the University's ad hominem attack that Avago U.S. is "seemingly intent on continuing to delay discovery."  [ECF No. 70 at 1.]  It is not Avago U.S.'s fault that the University chose, for its own tactical reasons, to sue two San Jose-based companies here, even though venue is improper for Avago U.S. and even though the University's choice of venue is grossly inconvenient for the witnesses.  And, as discussed above, this Court rejected a waiver argument in cases at far more advanced stages.  *Cutsforth*, 2017 WL 3381816, at *1 (venue transferred when motion to dismiss was filed "[j]ust as the Court was preparing to issue its claim construction order[.]");*Valspar*, 2017 WL 3382063, at *1 (noting that defendant previously admitted that venue was proper under pre-*TC Heartland* law).[9]

## III.   Venue is Improper As To Avago U.S. and the Action Should Be Transferred to the Northern District of California

### A.    Legal Standards For Establishing Venue Under 28 U.S.C. § 1400(b)

The parties agree on several key points.  First, after *TC Heartland*, 28 U.S.C. § 1400(b) is the sole and exclusive provision for venue in patent cases.  [*See* ECF No. 59 at

---

[8] This is also one of the reasons that the Court should stay the litigation pending a Patent Office proceeding that could potentially result in the cancellation of the asserted patent claims.  [*See* ECF No. 65 at 16-17.]

[9] Defendants have also moved to transfer venue under § 1404(a) [*see* ECF No. 65], which motion should be granted even if venue is proper.  *See Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964) ("Although both sections were broadly designed to allow transfer instead of dismissal, [28 U.S.C.] § 1406 (a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404 (a) operates on the premise that the plaintiff has properly exercised his venue privilege.")

1-2, ECF No. 70 at 9 (University's opposition); *contra*, ECF No. 40 at ¶ 31 (University invoking 28 U.S.C. § 1391 in the First Amended Complaint).]   Second, personal jurisdiction and venue in patent cases are now different inquiries.  The University has abandoned its contention that Defendants "reside" in Minnesota just because there is allegedly personal jurisdiction here.  [*Compare* ECF No. 40 at ¶ 31 with ECF No. 70 at 9, citing *TC Heartland*.]  Third, a patent action can be brought only "in the judicial district [1] where the defendant resides, or [2a] where the defendant has committed acts of infringement *and* [2b] has a regular and established place of business."  28 U.S.C. § 1400(b) (emphasis added; *see* ECF No. 59 at 1; ECF No. 70 at 9).

The parties primarily disagree on what constitutes a "regular and established place of business" and whether LSI's place of business and activities in Minnesota can be imputed to Avago U.S.  The relevant legal standards are discussed below.

## 1.    "Regular and Established Place of Business"

The University suggests that a "regular and established place of business" does not require a "fixed physical presence in the sense of a formal office or store," and that the test is whether the defendant has a "permanent and continuous presence" in the forum. [ECF No. 70 at 10, citing *In re Cordis*, 769 F.2d 733, 737 (Fed. Cir. 1985).]  But whether the test requires a "formal office or store" or a "permanent and continuous presence," the statute itself, § 1400(b), requires a regular and established "place" of business.  And importantly, *Cordis* did not define the contours of what constitutes a "permanent and

continuous presence."[10]    Absent from the University's brief is that *Cordis* was based on

the many special facts listed in the footnote below.[11]    *Cordis* did not set forth any bright

line rules or, for that matter, anything that supports the University's position here.   "[T]he

court's decision supports only the holding that a 'rational and substantial legal

argument'" was made to support the district court's finding that venue was proper in view

---

[10] The University cites a recent opinion from the Eastern District of Texas for the proposition that "an allegation of infringement is itself sufficient to establish venue," (ECF No. 70 at 10, citing *Raytheon Co. v. Cray, Inc.*, No. 2:15-cv-01554-JRG, 2017 WL 2813896, at *4 (E.D. Tex. June 29, 2017)) but  the portion of the opinion quoted was addressing only factor 2a of § 1400(b) ("where the defendant has committed acts of infringement"), and it was not addressing the "regular and established place of business" requirement.  The *Raytheon* opinion is the subject of a petition for a writ of mandamus. *In re Cray, Inc*., Fed. Cir. No. 17-00129 (petition filed July 17, 2017).

[11] (1) Cordis was a Florida Corporation that employed two full-time sales representatives (Rutstein and Dahlberg) in Minnesota; (2) Cordis engaged a secretarial service in Minnesota to receive messages, provide typing services, mail and receive shipments of Cordis sales literature; (3) The Minneapolis telephone directory included Cordis' name and telephone number and listed the address of the secretarial service as Cordis' address; (4) Rutstein and Dahlberg placed orders to the Florida headquarters for customers (hospitals) in Minnesota; (5) Rutstein and Dahlberg also kept inventory in Minnesota and supplied products directly to hospitals in Minnesota; (6) In "addition to acting as sales representatives, Rutstein and Dahlberg act as technical consultants and in this capacity they are present in the operating room during a significant number of surgical implantations of Cordis pacemakers"; (7) "During the implantation they provide technical product information to the physician";  (8) "In addition, they provide post-implantation consultations"; and (9) "Both men also give presentations to small groups of medical personnel regarding technological developments."  *See In re Cordis*, 769 F.2d at 735.

of the stringent standard for granting the mandamus remedy. *Johnston v. IVAC Corp.*, 681 F. Supp. 959, 964 (D. Mass. 1987).[12]

The phrase "regular and established place of business" must be narrowly construed.[13] If "regular and established place of business" were to mean nothing more than the type of contacts that are sufficient to establish personal jurisdiction over a defendant, then *TC Heartland* would be meaningless. 137 S. Ct. at 1517 (rejecting that the first prong of § 1400(b) allows a plaintiff to "bring a patent infringement lawsuit against a corporation in any district in which the corporation is subject to personal jurisdiction"). And, as courts previously have observed, as a starting point, "the test of 'regular and established place of business' is a stricter test than the one of merely 'doing business.'" *Shapiro v. Ford Motor Co.*, 359 F. Supp. 350, 352 (D. Md. 1973).

Prior to *TC Heartland*, and prior to modern instruction on statutory interpretation from the Supreme Court, lower courts were split on whether a "fixed physical presence" is strictly required. The better reasoned decisions interpret "place" to mean "physical

---

[12] The *Cordis* Court itself observed that the remedy of a writ of mandamus is "strong medicine" to be reserved for the most serious and critical ills, and that it should deny the remedy "if a rational and substantial legal argument can be made in support of the rule in question" even if "on normal appeal, a court might find reversible error." *Id.* at 737. It was for these reasons that the remedy was denied. "As the record indicate that a rational and substantial legal argument may be made in support of the court's order denying Cordis' motion to dismiss for lack of proper venue, we decline to issue the writ." *Id.*

[13] *See Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566-67 (1942) ("[T]he Act of 1897 [the predecessor to § 1400(b)] was a restrictive measure, limiting a prior, broader venue."); *Pure Oil Co. v. Surarez*, 384 U.S. 202, 207 (1922) ("The patent infringement venue statute was enacted in 1897 specifically to narrow venue in such suits."); *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." (internal quotation and citation omitted)).

14

place" – *i.e.* a physical location.  As Avago U.S. has no "place of business" in Minnesota, that would, absent this confusion in the case law, end the inquiry.  *See, e.g.*, *Univ. of Ill. Found. v. Channel Master Corp.*, 382 F.2d 514, 516 (7th Cir. 1967) ("We hold that we cannot by any stretch of the imagination characterize Nicolau's [a salesman's] family bedroom or even his entire home as 'a regular and established place of business' of [defendant] Channel Master in the Northern District of Illinois."); *Warner-Lambert Co. v. C.B. Fleet Co.*, 583 F. Supp. 519, 523 (D.N.J. 1984) ("First and most importantly, courts look to whether the defendant maintains, controls and pays for a permanent physical location from which sales are made within the district."); *IPCO Hosp. Supply Corp. (Whaledent Int'l Div.) v. Les Fils D'Auguste Maillefer S.A.*, 446 F. Supp. 206, 208 (S.D.N.Y. 1978) ("It must appear that a defendant is regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control."  (citations omitted)).[14]

## 2.  Venue for LSI Cannot be Imputed to Avago U.S.

Even in the context of a parent and subsidiary relationship (which is not at issue here),[15] venue cannot be established through a subsidiary or a parent if the corporations are formally separate.  *See*, *e.g.*, *Shapiro v. Ford Motor Company*, 359 F. Supp. 350, 357

---

[14] Some courts provided a broader construction of "place of business."  But even under the atextual and more permissive view, there is broad agreement that "regular and established place of business" requires at least that a corporate defendant "does its business in that district through a permanent and continuous presence there."  *In re Cordis*, 769 F.2d at 737 ("1400(b) requires a significant ongoing corporate presence by a defendant in the district….").

[15] LSI and Avago U.S. are separate Delaware corporations.  [Dkt. No. 40 (First Amended Complaint) at ¶¶ 10-14; Dkt. No. 62 (LSI's Answer) at ¶¶ 10-14.]  LSI does not own Avago U.S. and Avago U.S. does not own LSI.  [*See id.*]

(D. Md. 1973) ("[E]ven where there is a unitary business purpose to manufacture and sell to ultimate consumers, if the operations of the two or more functional components of that unitary business purpose are themselves vested in formally separate entities, then venue over one under § 1400(b) cannot be gained by treating the regular and established place of business of the other as the office of the former.") (citing *Manville Boiler Co. v. Columbia Boiler Co. of Pottstown*, 269 F.2d 600 (4th Cir. 1959)).  And under Delaware law, the corporate veil is not pierced unless a corporation "is a sham and exist[s] for no other purpose than as a vehicle for fraud." *Mason v. Network of Wilmington, Inc*., No. CIV.A. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005).

> **B.** **The Motion Should be Granted Because the University Does not Identify any "Place" Where Avago U.S. Purportedly Conducts Business in Minnesota**

In contrast to its lengthy incorrect procedural arguments discussed above, the University devoted just two pages to its argument that it had allegedly "adequately pleaded proper venue as to Avago [U.S.]" [Dkt. No. 70 at 23-24.]  But none of its allegations, taken alone or considered together, comes anywhere close to showing that Avago U.S. has a regular and established place of business anywhere in Minnesota.  The University's deficient allegations are discussed in turn below:

First, the University observes that "***LSI*** designs, develops, and supplies HDD Chips[.]"  [Dkt. No. 70 at 23 (emphasis added).]  But as a matter of law, LSI's activities cannot be used to establish venue for Avago U.S., unless the University can prove that LSI or Avago U.S. are sham corporations that exist for no other purpose but as vehicles

for committing fraud. *See Mason*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *3; *see also Shapiro*, 359 F. Supp. at 357. The University offers no such argument.

Second, the University observes that Avago U.S. "has handled **the U.S.** sale and distribution of LSI products[.]"   [Dkt. No. 70 at 23 (emphasis added).]   But notably absent from this allegation is any mention of any particular place that Avago U.S. allegedly sells such products **in Minnesota**. Under the patent-specific venue statute, 28 U.S.C. § 1400(b), the alleged "regular and established place of business" must be in plaintiff's chosen forum; places of business outside of the forum are not sufficient or relevant. Under the University's argument, Avago U.S. would be subject to patent venue in almost any state, but that is not the law after *TC Heartland.*

Third, the University makes much of **LSI's** "facility in Mendota Heights" Minnesota. [Dkt. No. 70 at 23.]   But  LSI's place of business may not be imputed to Avago U.S.  *See Mason*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *3; *see also Shapiro*, 359 F. Supp. at 357.  Avago U.S. does not have any office, plant, or any other building in Minnesota [*see* Leon Decl., Dkt. No. 67] and the University alleged only that "Avago U.S. **or one of its affiliate companies**" has an office in Minnesota.  [Dkt. No. 40 at ¶ 13 (emphasis added).]  As LSI explained in its Answer, LSI has such an office, but Avago U.S. does not.  [Dkt. No.62 at ¶ 13.]  The University elected to omit this from its opposition brief, and it apparently concedes the fact that Avago U.S. itself does not have any offices or buildings in Minnesota.

The University argues that the above three allegations are sufficient to make out a *prima facie* case that Avago has "a regular and established place of business" in

Minnesota under *Cordis*.  [Dkt. No. 70 at 23-24.]  Not so.  The University merely rehashes the facts that establish venue for LSI but it does not show that Avago U.S. has a regular and established place of business in Minnesota.  And as discussed above, the University over-reads *Cordis*, which opinion was rendered in the context of a denial for a writ of mandamus, *Johnston*, 681 F. Supp. at 964, and was based on special facts that are not alleged here.  *See In re Cordis*, 769 F.2d at 735.

Unable to show that Avago U.S. has a regular and established place of business in Minnesota, the University pivots to what it calls the "Sales Cycle."  The University offers a series of generic arguments that supposedly "strengthen its claim that venue against Avago is proper in Minnesota."  [Dkt. No. 70 at 24.]  They do no such thing.

The University's "Sales Cycle" arguments are directed to "***Defendants***" as some sort of a composite entity.  [*See* Dkt. No. 70 at 24 (emphasis added); *see also* First Amended Complaint, Dkt. No. 40 at ¶¶ 114-129.]  For example, the University at paragraph 115 of the First Amended Complaint alleges that "Defendants" design and engineer the products at issue.  But as the University knows, and as it alleges elsewhere, it is LSI—not both "Defendants"—that designs and engineers LSI's products.  [*See* Dkt. No. 40 at ¶ 16 ("LSI designs, develops, and supplies" the accused "HDD Chips.")]  As another example, the University alleges that "Defendants" locate "their field application and design engineers" near their customers, including customers in Minnesota.  [Dkt. No. 70 at 24.]  For this allegation, the University relies on a 10-K filing from Avago Technologies Limited, which was a separate and distinct Singapore company that is not a defendant in this case.  [*See* Dkt. No. 40-1 at 1(listing address of executive offices at 1

Yishun Avenue 7, Singapore 768923)).]  And while *LSI* employs engineers in Minnesota, Avago U.S. does not.  Yet again, the University improperly seeks to disregard the separateness of these Delaware entities by lumping them together as composite "Defendants" in its futile effort to show that venue is proper for Avago U.S.  *See Mason*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *3; *see also Shapiro*, 359 F. Supp. at 357.

      **C.**      **The Motion Should be Granted Because the University Does Not Plead or Show that Avago U.S. Infringes in Minnesota**

The fact that Avago U.S. does not have a "regular and established place of business in Minnesota" is a sufficient reason for the Court to grant this motion and to transfer the case to the Northern District of California because the second prong of § 1400(b) requires that "the defendant has committed acts of infringement *and* has a regular and established place of business" in the forum.  (Emphasis added.)

In any event, the University has also failed to adequately plead or show that Avago U.S. infringes the asserted patent claims in Minnesota.  Here again, the University attempts to blur the line between LSI and Avago U.S. by referring to them as composite "Defendants."  [*See* Dkt. No. 70 at 25, citing Dkt. No. 40 at ¶¶ 20-23, 29.]  As mentioned above—and as the University apparently concedes—there is no Avago U.S. facility anywhere in the State of Minnesota.  [Leon Decl., Dkt. No. 67.]

Moreover, the University has not identified any Avago U.S. employees in Minnesota who sell the accused products or that provide technical assistance with respect to such products.  The allegations on which the University relies are, at best, applicable only to LSI.  [*Compare* Dkt. No. 40 at ¶¶ 20-23, 29 (allegations use the word

"Defendants") *with id.* at ¶ 16 ("LSI designs, develops, and supplies" the accused "HDD Chips.")]  LSI's contacts cannot be legally imputed to Avago U.S. at this or any stage of litigation because these are separate Delaware entities.  *See Mason*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *3; *see also Shapiro*, 359 F. Supp. at 357.

## CONCLUSION

Venue is improper because Avago U.S. does not infringe or have a regular and established place of business in Minnesota.  Avago U.S. therefore respectfully asks the Court dismiss the Complaint based on Rule 12(b)(3).  Alternatively, the Court should transfer venue under § 1404(a), which the Defendants have requested in a separate motion that will be heard together with this motion to dismiss on September 22, 2017.

BASSFORD REMELE
*A Professional Association*

Dated:  August 17, 2017          By *s/ Jessica L. Klander*
                                 Lewis A. Remele, Jr. (MN #90724)
                                 Jessica L. Klander (MN #392290)
                                 Attorneys for Defendants
                                 100 South Fifth Street, Suite 1500
                                 Minneapolis, Minnesota  55402-1254
                                 Telephone:   (612) 333-3000
                                 Facsimile:     (612) 333-8829
                                 lremele@bassford.com
                                 jklander@bassford.com


                                 *and*

**KILPATRICK TOWNSEND & STOCKTON LLP**

Dated: August 17, 2017

By *s/ David E. Sipiora*
David E. Sipiora (CO # 29759)
Edward J. Mayle (VA #80667)
1400 Wewatta Street, Suite 600
Denver, Colorado  80202
Telephone: (303) 405-8528
Facsimile: (303) 593-3905
dsipiora@kilpatricktownsend.com
TMayle@kilpatricktownsend.com

*Attorneys for Defendants*

1701535.docx